IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARNELL CHILES, | : | |
|    *Plaintiff*, | : | |
|        v. | : | CIVIL ACTION |
| | : | |
| CAROLYN COLVIN, | : | NO. 11-941 |
|    Acting Commissioner of Social Security, | : | |
|    *Defendant*.[1] | : | |

**MEMORANDUM OPINION**

Pratter, J.                                                                                                         July 9th 2013

**I.  INTRODUCTION**

Plaintiff Darnell Chiles brings this action pursuant to 42 U.S.C. § 1383(c)(3), which incorporates by reference 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ( "SSI") under Title XVI of the Social Security Act (the "Act"). After independent consideration of the Administrative Record, submitted pleadings, U.S. Chief Magistrate Judge Carol Sandra Moore Wells' Report and Recommendation ("R&R"), Mr. Chiles' Objections thereto, and the Commissioner's Response, the Court approves and adopts the R&R in part and denies it in part. The Court grants in part and denies in part Mr. Chiles' request for review, based upon the Administrative Law Judge's failure to consider record evidence bearing upon Mr. Chiles' limitations in the absence of substance abuse, and the Court remands to the Commissioner for further proceedings.

**II.  BACKGROUND**

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security.  Under Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

1

Mr. Chiles, born on April 14, 1963, was 44 years old at the time of his alleged onset of disability. (R. 18). He has an eleventh grade education level and he has past relevant work as a glazer helper and a janitor. (R. 154, 158, 181). On November 13, 2007, Mr. Chiles protectively filed his claim for SSI pursuant to Title XVI of the Act. Mr. Chiles claimed that he became disabled on November 1, 2007 due to bipolar disorder, hypertension, stomach injury, hepatitis C, and migraines. (R. 54, 153).

After his claim was denied initially on March 10, 2008 (R. 56), Mr. Chiles submitted a request for a hearing before an Administrative Law Judge ("ALJ") (R. 61). He appeared at a hearing before ALJ Christine McCafferty on November 12, 2009, at which Mr. Chiles was represented by counsel (R. 23). During the hearing, Mr. Chiles testified to his impairments, employment experience, history of treatment for mental health and substance abuse, and daily lifestyle. (R. 27-34, 36-49). Additionally, the ALJ heard testimony from vocational expert ("V.E.") James Earhart, who opined that Mr. Chiles could perform representative occupations when considering his age, education, work experience, and residual functional capacity ("RFC") [2] of being limited to simple repetitive tasks with only occasional changes in the work setting, and with only occasional contact with the public and co-workers. (R. 50-52).

On February 22, 2010, the ALJ issued a decision denying Mr. Chiles' request for benefits, concluding that Mr. Chiles is not disabled under Section 1614(a)(3)(A) of the Act. (R. 9, 19). The ALJ made the following relevant findings of fact and conclusions of law:

- Mr. Chiles has the following severe impairments: a mood disorder and a drug abuse disorder (20 C.F.R. § 416.920(c)). (R. 12).

---

[2] RFC is an individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.

2

- Mr. Chiles' impairments, including the substance use disorder, meet Listing 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d)). (R. 12).

- If Mr. Chiles stopped the substance use, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities, and therefore, Mr. Chiles would continue to have a severe impairment or combination of impairments. (R. 13).

- If Mr. Chiles stopped the substance use, he would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d)). (R. 13).

- If Mr. Chiles stopped the substance use, he would have the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: Mr. Chiles' capacity for work at all exertional levels is diminished by an inability to perform more than simple, routine, one or two step reasoning tasks; by an inability to deal with more than occasional changes in a work setting; and by an inability to deal with more than occasional contact with the public and co-workers. (R. 14).

- Because Mr. Chiles would not be disabled if he stopped the substance use (20 C.F.R. § 416.920(g)), his substance use disorder is a contributing factor material to the determination of his disability, pursuant to 20 C.F.R. § 416.935. (R. 18).

- If Mr. Chiles stopped the substance use, considering his age, education, work experience and residual functional capacity, there would be a significant number of jobs in the national economy that he could perform (20 C.F.R. §§ 416.960(c) and 416.966). (R. 18).

- Because Mr. Chiles would not be disabled if he stopped the substance use (20 C.F.R. § 416.920(g)), his substance use disorder is a contributing factor material to the determination of disability (20 C.F.R. § 416.935). (R. 18).

Mr. Chiles requested review of the ALJ's decision by the Appeals Council, which the Appeals Council denied on December 23, 2010. (R. 1).

On February 10, 2011, Mr. Chiles filed a Complaint seeking review in this Court (Doc. No. 3). Pursuant to Local Rule of Civil Procedure 72.1 and 28 U.S.C. § 636(b)(1)(B), the matter was referred to Magistrate Judge Wells for an R&R on May 17, 2011 (Doc. No. 10). On January 31, 2012, Magistrate Judge Wells issued her R&R, recommending the denial of Mr. Chiles' request for review and the entry of judgment in favor of the Commissioner (Doc. No. 16).

Mr. Chiles timely filed Objections to the R&R on February 15, 2012 (Doc. No. 17), and the Commissioner responded to those Objections on March 2, 2012 (Doc. No. 18).

### III.    STANDARD OF REVIEW

When a party makes a timely and specific objection to a portion of a magistrate judge's R&R, the district court applies a *de novo* review to the issues raised on objection. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980). The court may accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. *Id.*

However, the district court may review the ALJ's final decision only in order to determine "whether that decision is supported by substantial evidence." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Stated differently, the court "is bound by the ALJ's findings of fact if they are supported by substantial evidence on the record." *Plummber v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft*, 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)). The court may not "weigh the evidence," *Williams v. Sullivan*, 970 F.2d 1178, 1183 (3d Cir. 1992), and "will not set the Commissioner's decision aside if it is supported by substantial evidence, even if [the court] would have decided the factual inquiry differently," *Hartranft*, 181 F.3d at 360.

An ALJ's decision must present sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). While the ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, the ALJ must provide sufficient discussion to allow the

4

court to determine whether any rejection of potentially significant, probative evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706).

Under the Act, a claimant bears the burden to show that he or she is disabled because he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the regulations implementing the Act, the Commissioner uses a five-step sequential process to determine whether a person is "disabled."[3] The claimant satisfies the burden of proving disability by showing an inability to return to his past relevant work. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005). Once the claimant makes this showing, the burden shifts to the Commissioner to show that, given the claimant's age, education, and work experience, the claimant has the ability to perform specific jobs existing in the economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Rutherford*, 399 F.3d at 551.

IV. **DISCUSSION**

Mr. Chiles makes general and specific Objections to Magistrate Judge Wells' R&R. Generally, Mr. Chiles asserts that Magistrate Judge Wells: (1) erred in determining that the ALJ properly found that evidence dating from before Mr. Chiles' application date is not material to the adjudication of his disability; (2) erred in concluding that the ALJ properly found that substance abuse caused any deterioration in Mr. Chiles' condition and abstinence caused any improvement in

---

[3] This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment or severe combination of impairments; (3) has an impairment that meets or medically equals the requirements of a listed impairment; (4) has a RFC to perform the claimant's past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. 20 C.F.R. § 416.920.

5

his condition; and (3) violated the *Chenery* rule by supplying a rationale for the ALJ's consideration of a 2006 medical report of Mr. Chiles' treating psychologist Dr. John J.S. Howe, Ph.D., where the ALJ supplied no such rationale.

Specifically, Mr. Chiles asserts that Magistrate Judge Wells: (1) erred in determining that the ALJ properly declined to obtain Mr. Chiles' prior disability filings; (2) erred in concluding that the ALJ adequately explained her step-three findings (as to whether Mr. Chiles has an impairment that meets or equals the requirements of a listed impairment) and her assessment of his RFC; (3) erred in determining that the ALJ adequately explained her rejection of the medical opinions included within Dr. Howe's report; (4) erred in concluding that the ALJ adequately explained her adverse finding regarding Mr. Chiles' credibility; and (5) erred in determining that the ALJ properly relied on the vocational testimony presented at the administrative hearing.

For the reasons that follow, the Court agrees with Mr. Chiles' main contention that the ALJ failed to consider evidence relevant to Mr. Chiles' substance abuse during the relevant period, and that this failure undermines the ALJ's finding that his substance abuse is a contributing factor material to the determination of his disability.[4] Thus, this Court will remand the case to the ALJ for further consideration of this issue. Moreover, because the ALJ's finding on the issue of Mr. Chiles' limitations absent substance abuse impacted the ALJ's assessment of Mr. Chiles' RFC, credibility, and the vocational testimony presented at the administrative hearing, remand is

---

[4] The regulations implementing the Act explain that substance abuse is a contributing factor material to a determination of disability if there would be no disability absent the substance abuse. 20 C.F.R. §§ 404.1535, 416.935. In making this decision, the ALJ must evaluate the disability independent of the substance abuse. *Id.* If the claimant's limitations are not disabling after eliminating the substance abuse related factors, the substance abuse is a material factor and the claimant is not eligible for benefits. *Id.* However, if the limitations remain disabling without the substance abuse, the claimant is eligible for benefits. *Id.* While the claimant bears the burden of proving immateriality, the ALJ must identify some medical evidence that supports substance abuse as a material factor justifying the denial of benefits (though an ALJ need not obtain expert psychiatric opinion evidence on the issue). *See McGill v. Comm'r of Soc. Sec.*, 288 F. App'x 50, 53 (3d Cir. 2008).

appropriate on these issues as well.  Because the Court agrees with Mr. Chiles' argument that the R&R runs afoul of the *Chenery* rule with respect to Magistrate Judge Wells' assessment of Dr. Howe's report, and because the Court finds that the ALJ failed to adequately explain her reasoning in reviewing Dr. Howe's report, the Court remands for reconsideration of that report.

The Court will not address Mr. Chiles' objections concerning whether the ALJ was required to obtain, consider, and reopen his previous disability claims.  The Court approves and adopts Magistrate Judge Wells' analysis of those issues in her R&R.  *See* R&R, Doc. No. 16, at 8-9.

### A.  Consideration of Mr. Chiles' Impairments Without Substance Abuse

In finding Mr. Chiles' substance abuse to be a contributing factor material to the determination of his disability, the ALJ gave significant probative weight to Mr. Chiles' Global Assessment Functioning ("GAF")[5] score upon discharge from treatment at Northwestern Human Services ("Northwestern").  On August 10, 2009, Mr. Chiles voluntarily entered outpatient treatment at Northwestern for his mental health and substance abuse impairments, and upon admission, his GAF score was 55.  (R. 357).  He continued to receive treatment at Northwestern until October 27, 2009.  (R. 15, 343).  As his discharge notes indicate, Mr. Chiles made good progress during treatment and frequently attended his counseling sessions.  (R. 15, 342-43).[6] Apparently, Mr. Chiles left Northwestern to start treatment at Intercommunity Action, Inc. ("INTERAC") because INTERAC was closer to his residence.  (R. 15, 343).  Upon his discharge from Northwestern on October 27, 2009, his GAF score was 65-70, a substantial improvement

---

[5] A GAF score is "the clinician's judgment of the individual's overall level of functioning."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders Text Revision (DSM IV-TR)* at 32 (4th Ed. 2000).
[6] Because some of these discharge notes are illegible or redacted, the Court cannot fully assess the information contained in these notes.  *See* R. 342-43.

7

from his GAF score upon admission. (R. 343).[7] Further, given the record evidence of Mr. Chiles' prior GAF scores during the years 2004 to 2007, which range from only 30 to 45[8], his score of 65-70 on October 27, 2009 represented his peak level of functioning recorded since 2004 and through the relevant period. *See* R&R, at 12-13.

Mr. Chiles began treatment at INTERAC on November 10, 2009. At his initial treatment evaluation held on the same date, Mr. Chiles had a GAF score of 53. (R. 358-76). During this initial evaluation, Mr. Chiles admitted to using alcohol, cocaine/crack, and cannabis in September 2009, a time that falls squarely within his period of treatment at Northwestern, where he purportedly complied with his treatment program. (R. 363-64).

The ALJ interpreted Mr. Chiles' relatively high GAF score upon his discharge from Northwestern to mean that his overall level of functioning improved markedly without substance abuse, as she observed that:

> GAF scores at the time of discharge from [Northwestern] range from 65 to 70 which do not support the degree of limitation alleged by the claimant. The medical evidence as a whole shows that when the claimant *is not abusing drugs* and is compliant with his mental health treatment he is stable. The record suggests that the claimant's mental health exacerbations are a function of the claimant's non-compliance with his medically recommended treatment regimens and continued substance abuse. There is no medical evidence of any adverse side effects experienced by the claimant from taking his prescribed medication. The medical evidence of record shows that the claimant's impairments are under relatively good control

---

[7] GAF scores range from 0 through 100. GAF scores in the range of 61-70 indicate "**Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning** (e.g., occasional truancy, or theft within the household), **but generally functioning pretty well, has some meaningful interpersonal relationships**. *DSM-IV-TR* at 34. A GAF score in the 51-60 range corresponds to "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers)." *DSM-IV-TR* at 34.
[8] A GAF score in the 41-50 range indicates "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequently shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job). A GAF score in the 31-40 range indicates "**Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

8

with medical monitoring, the use of prescribed medications, and *abstinence from substance abuse*.

(R. 16) (emphasis added). Significantly, the ALJ did not address Mr. Chiles' admitted use of drugs and alcohol during his treatment at Northwestern, as contained in his initial treatment evaluation at INTERAC. With respect to Mr. Chiles' treatment at INTERAC, the ALJ noted only that Mr. Chiles attended an initial evaluation at INTERAC but never returned for any further treatment. (R. 16).

The ALJ determined that Mr. Chiles' substance abuse was critical to her determination of whether or not his impairments met or equaled Listing 12.04. The ALJ found that Mr. Chiles met Listing 12.04 when his mental impairments were considered with his substance abuse, but did not meet Listing 12.04 when his mental impairments were considered independent of his substance abuse. (R. 12-13).

Magistrate Judge Wells agreed with the ALJ that the improvement in Mr. Chiles' GAF scores at Northwestern was attributable to his abstention from substance abuse, reasoning that:

> On October 27, 2009, his GAF was 65-70. (R. 343). The most recent GAF assessment contained in the record, taken two weeks later, on November 10, 2009 during an initial treatment evaluation at [INTERAC], was 53, in the range of "moderate" difficulties. (R. 359, 360, 374). This evidence does not suggest that, absent substance use, Plaintiff meets or medically equals Listing 12.04. The evidence further supports an inference that Plaintiff's condition *improved when he abstained from alcohol and substance abuse* and was medically monitored and treated for his bipolar disorder.

(R&R, at 12) (emphasis added). The R&R, like the ALJ's opinion, does not address Mr. Chiles' admitted substance abuse during treatment at Northwestern, even though Mr. Chiles requested review of the ALJ's decision based in part on this evidence in the record.[9] Magistrate Judge Wells

---

[9] *See Brief and Statement of Issues in Support of Request for Review*, Doc. No. 12, at 21 ("The record thus indicates that Plaintiff was engaging in substance abuse while being treated at Northwestern. The ALJ's assumption that the relatively high GAF recorded there reflected abstinence is unwarranted.").

also agreed with the ALJ's finding that Mr. Chiles' limitations, without substance abuse, would not meet or equal Listing 12.04. *See* R&R, at 9-11 ("Thus, the ALJ deemed Plaintiff's substance abuse was a major factor that allowed him to meet or medically equal Listing 12.04. This analysis was proper and is supported by the record.").

Because the ALJ's decision fails to address record evidence of Mr. Chiles' admitted substance abuse during his treatment at Northwestern—evidence that calls into question the critical inference that Mr. Chiles' improved level of functioning is caused by his abstention from substance abuse—substantial evidence does not support the ALJ's determination that Mr. Chiles would not be disabled without substance abuse. Accordingly, the Court remands to the ALJ for reconsideration of this significant issue of Mr. Chiles' limitations absent substance abuse. On remand, reopening the record may be necessary in order to adequately develop the record on the issue of Mr. Chiles' limitations absent substance abuse, for example, by ordering a medical expert evaluation of Mr. Chiles' mental impairments with, and without, substance abuse. *See Knox v. Barnhart*, 60 F. App'x 374, 377 (3d Cir. 2003) (remanding for further development of record as to claimant's psychiatric impairment without substance abuse); *Gaines v.* Astrue, No. 10-5098, 2011 U.S. Dist. LEXIS 135240, at *6, 27-33 (E.D. Pa. Sept. 7, 2011) (recommending remand because the ALJ relied in part on medical evidence that did not sufficiently address whether claimant would have remained disabled without substance abuse), *approved by, adopted by, remanded by*, 2011 U.S. Dist. LEXIS 134737 (E.D. Pa. Nov. 15, 2011).

### B. Assessment of Mr. Chiles' Residual Functional Capacity Without Substance Abuse

The ALJ's assessment of Mr. Chiles' limitations absent substance abuse also informed her assessment of Mr. Chiles' RFC. (R. 16-17). The ALJ's decision provides that:

> *In the absence of substance abuse* the claimant retains the ability to perform no more than simple, routine, one or two step reasoning tasks.  The claimant has an inability to deal with more than occasional changes in a work setting and an inability to deal with more than occasional contact with the public and co-workers.  This residual functional capacity assessment takes into account all of the claimant's legitimate conditions and the resulting limitations imposed on the claimant by his mental health issues *in the absence of substance abuse*.

(R. 16) (emphasis added).  Magistrate Judge Wells concurred with the ALJ's assessment of Mr. Chiles' RFC.  *See* R&R, at 12-13.

For the reasons more fully discussed above, the Court remands for reconsideration of Mr. Chiles' RFC in light of the record evidence, including his admitted substance abuse during his treatment at Northwestern.

### C.  Consideration of Mr. Chiles' Credibility

The ALJ's evaluation of Mr. Chiles' limitations without substance use also influenced her assessment of his credibility.  (R. 16).  While an ALJ's determination of a witness's credibility ordinarily is entitled to deference because the ALJ has the opportunity to assess the witness's demeanor at a hearing, it must be supported by record evidence.  *See Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (citing *Atl. Limousine, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001)).

In assessing Mr. Chiles' credibility, the ALJ appeared to rely on the substantial increase in Mr. Chiles' GAF scores at Northwestern as evidence of significant progress in his functioning when he is not abusing substances.  Applying this evidence to Mr. Chiles' reported levels of functioning, the ALJ found Mr. Chiles to be only partly credible, observing that his "statements that he is completely unable to work are not entirely credible in light of discrepancies between the claimant's assertions and information contained in the documentary reports . . . . GAF scores at the time of discharge from [Northwestern] range from 65 to 70 which do not support the degree of limitation alleged by the claimant."  (R. 16).

11

Magistrate Judge Wells found the ALJ's assessment of Mr. Chiles' partial credibility to be supported by the record evidence. R&R, at 15-16.

However, the ALJ's assessment of Mr. Chiles' credibility lacks a sufficient basis in the record because it does not take into account the full picture of his limitations in the absence of substance abuse, namely his admitted substance abuse during his treatment at Northwestern. Thus, the Court remands for the ALJ to reassess her finding as to Mr. Chiles' credibility.

### D. Assessment of Vocational Evidence

The ALJ also evaluated the vocational evidence partly based on her assessment of Mr. Chiles' limitations without substance abuse, an assessment that, as more fully discussed above, is brought into serious question by the record evidence. Thus, the Court remands for reconsideration of the vocational evidence on this basis, and not for the reasons Mr. Chiles identifies.[10] On remand, the ALJ ought to reevaluate Mr. Chiles' capacity for work in light of the record evidence bearing upon his limitations with, and without, substance abuse, and any further medical opinion evidence that the ALJ may order to fully develop the record on this issue. Further, the ALJ may find it beneficial to obtain additional expert testimony from a V.E. as to Mr. Chiles' capacity for

---

[10] In order to evaluate Mr. Chiles' capacity for work, at the hearing, the ALJ asked the V.E. the hypothetical question of whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and the residual functional capacity the claimant would have if he stopped the substance use. (R. 18, 50). Based upon this hypothetical question, the V.E. opined that Mr. Chiles would be unable to perform his past relevant work, but that he would be able to perform work as an assembler of vehicle parts (Dictionary of Occupational Titles ("DOT") 806.684-010); kitchen helper (DOT 318.687-010); and as a laundry laborer (DOT 361.687-018). (R. 18, 50-52). Based upon her consideration of the V.E.'s testimony, the ALJ found that if Mr. Chiles stopped his substance abuse, he would be able to perform his past relevant work as a glazer helper and as a janitor or, alternatively, he would be able to perform other jobs existing in significant numbers nationally and regionally, including as an assembler of vehicle parts, kitchen helper, and laundry laborer. (R. 17-18).

Mr. Chiles alleges that the ALJ improperly relied on the testimony of the V.E., which he argues contains unexplained inconsistencies with DOT information concerning the positions of assembler of motor vehicle parts and kitchen helper because Mr. Chiles' RFC prevents him from performing these occupations. Magistrate Judge Wells addressed this argument, concluding that even if the positions of assembler of motor vehicle parts and kitchen helper require levels of reasoning inconsistent with Mr. Chiles' RFC as posed to the V.E. at the administrative hearing, remand is unnecessary because Mr. Chiles concedes that he can perform work as a laundry laborer, the third position that the V.E. opined Mr. Chiles is capable of performing. *See* R&R, at 16-17 (citing *Rutherford*, 399 F.3d at 557).

work when considering his age, education, work experience, and the full record evidence of his limitations and RFC. While ultimately the ALJ may find that Mr. Chiles is suited for work as a laundry laborer, as Mr. Chiles has apparently conceded, *see Brief and Statement of Issues in Support of Request for Review*, Doc. No. 12, at 24-25, the Court expects the ALJ to consider whether Mr. Chiles is capable of performing this occupation, or other representative occupations, only after fully considering the record evidence of Mr. Chiles' limitations in the presence and absence of substance abuse.

### E. Consideration of Dr. Howe's May 15, 2006 Medical Report

Mr. Chiles argues that the R&R violates the *Chenery* rule with respect to Magistrate Judge Wells' consideration of the May 15, 2006 medical report of Dr. Howe, a treating psychologist of Mr. Chiles (R. 313-15). The Supreme Court in *S.E.C. v. Chenery Corporation* articulated the now well-settled principle that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." 318 U.S. 80, 87 (1943). Stated differently, in reviewing an ALJ's disability determination, the court must consider only the rationale articulated by the ALJ. If that rationale is inadequate or improper to support the decision, the reviewing court should not substitute its own analysis for that of the ALJ; instead, the court must reverse and remand for the ALJ to reconsider the rationale for its decision. *See id.*

The ALJ explicitly addressed Dr. Howe's report only in discussing the record medical evidence dating from before the relevant period; that is, before November 13, 2007. (R. 15). Specifically, the ALJ's decision provides that "[a] psychologist who treated the claimant with outpatient counseling in 2005 and 2006 reported that the claimant has a history of substance abuse." (R. 15). The ALJ does not indicate what probative weight, if any, she gave to this report when rendering her decision. In requesting review of the ALJ's decision, Mr. Chiles argued that

the ALJ failed to fully address and consider Dr. Howe's report, especially because Dr. Howe opines in the report that Mr. Chiles meets a listing-level degree of mental impairment even while his substance abuse was in remission. *See Brief and Statement of Issues in Support of Request for Review*, Doc. No. 12, at 11-12, 15-17, 19. In response, the Government contended that the ALJ gave Dr. Howe's report little weight because it was dated 18 months before the relevant period, and because it was inconsistent with other record evidence indicating that Mr. Chiles had relapsed during the period when Dr. Howe considered Mr. Chiles to be in remission from his substance abuse. *See Response to Plaintiff's Request for Review*, Doc. No. 13, at 7-8; *see also* R&R, at 11.

In the R&R, Magistrate Judge Wells rejects Mr. Chiles' argument that the ALJ failed to properly consider Dr. Howe's report, explaining that "the ALJ adequately discussed Dr. Howe's 2006 report in conjunction with the other evidence of record. *See* (R. 15-16)." *See* R&R, at 14. However, in the R&R, Magistrate Judge Wells addresses Dr. Howe's report to a greater extent than the ALJ addressed it, providing that:

> Plaintiff references a May 15, 2006 medical report completed by John J. S. Howe, Ph.D., which indicated that Plaintiff had remained drug free since January 2006. *See* Pl.'s Br. at 11; (R. 314). Dr. Howe's statement is inaccurate and outdated since evidence contained in the record indicates that Plaintiff has continuously relapsed and engaged in alcohol and substance abuse. *See* (R. 229-75, 279-80, 331, 339, 363).

R&R, at 11. Mr. Chiles argues that the R&R violates *Chenery* because Magistrate Judge Wells supplies a reason for rejecting Dr. Howe's report where the ALJ did not offer any reason for doing so. *See* Objections to R&R, Doc. No. 17, at 7. Indeed, the ALJ's decision did not provide any reason for accepting or rejecting the opinions contained within Dr. Howe's report. (R. 15-16). While Magistrate Judge Wells' rationale ultimately may be accurate in explaining why the ALJ

14

may have accorded Dr. Howe's report little probative weight, because this rationale is not articulated in the ALJ's decision, it runs afoul of *Chenery*.

Accordingly, because the ALJ's assessment of the opinions within Dr. Howe's medical report remains unclear, and because those opinions may be relevant to evaluating Mr. Chiles' limitations absent substance abuse, the Court remands for the ALJ to address more specifically Dr. Howe's report and articulate her reasons for accepting or rejecting the medical opinions contained within it.[11]

## V. CONCLUSION

As discussed above, because the Court is unable to find that substantial evidence supports the ALJ's decision, the Court hereby remands this case to the ALJ for further proceedings consistent with this Opinion, specifically for further review of the following issues: (1) Mr. Chiles' impairments with, and without, substance abuse; (2) Mr. Chiles' RFC; (3) Mr. Chiles' credibility; (4) Mr. Chiles' capability of performing work in the national and regional economies; and (5) Dr. Howe's 2006 medical report.

An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[11] Although Dr. Howe's report pre-dates Chiles' alleged onset date of disability by approximately 13 months, to the extent that the report is probative of Chiles' mental impairments absent substance use, it is relevant to the issues in this case, including Chiles' limitations during the relevant period. *See Hartzog v. Astrue*, No. 11-1160, 2012 U.S. Dist. LEXIS 104940, at *6 n. 1 (W.D. Pa. July 27, 2012) (citing *Reilly v. Office of Pers. Mgmt.*, 571 F.3d 1372, 1381-82 (Fed. Cir. 2009)).